IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TERRANCE EDWARDS,

                Plaintiff,                      ORDER and OPINION

     v.                                      08-cv-352-bbc

JEREMY STANIEC, JOE BEAHM,
TRAVIS CAUL, J. HAWKINS, Sgt.
ERIC KRUEGER, and
BRIAN GREFF, Lt.

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff has brought this lawsuit pursuant to 42 U.S.C. § 1983, alleging that defendants violated his Eighth Amendment rights by using excessive force against him in the process of restraining him following a suicide attempt. Now before the court is defendants' motion for summary judgment, dkt. #40 and defendant Jeremy Staniec's motion to stay the proceedings against him, dkt. #39. I will grant defendants' motion for summary judgment because no reasonable jury could find that defendants' use of force against plaintiff was excessive under the circumstances. Because I will grant defendants' motion for summary judgment, I will deny as moot defendant Staniec's motion to stay proceedings against him.

Before turning to the facts, a few words about procedure are in order. First, although

plaintiff does not dispute most of the facts proposed by defendants, he has his own version of the story related to his and defendants' behavior during the incident in question. The matters he describes are crucial to a determination of the question whether defendants used excessive force against plaintiff. Unfortunately, plaintiff failed to properly dispute the facts proposed by defendants or propose his own facts regarding the incident. Although he states in his brief that he tried to cooperate with defendants and that defendants treated him brutally, he does not propose these facts, as he was required to do, or include citations to admissible evidence to support his statements disputing defendants' version of the incident, as he was instructed. Procedure to Be Followed on Motions for Summary Judgment, I.B.2. and II.D.2, and Memorandum to Pro Se Litigants Regarding Summary Judgment Motions in Cases Assigned to Judge Crabb, attached to Preliminary Pretrial Conference Order (September 19, 2008), dkt. #17.

Plaintiff's failings are not merely technical. Not only does he fail to cite to admissible evidence in his proposed findings of fact or responses, he fails to submit admissible evidence that would support his version of the incident. Although he submits four affidavits, all are simply statements that certain documents he submits are true and correct, including defendants' incident reports, his health records, and an unsworn excerpt from his complaint. He provides no sworn statement describing his version of the incident. Therefore, certain key "facts" of plaintiff's case, as described in his brief, must be disregarded and defendants'

2

proposed findings of fact must be taken as undisputed.

Next, although defendants' proposed facts were undisputed, many must be disregarded as conclusory statements and others require interpretation because they are improper characterizations. Throughout the proposed findings of fact (and in the supporting affidavits), defendants described behavior and plaintiff's using vague statements or euphemisms. For example, they explain that at one point plaintiff "became aggressive" and at times he "became combative" or "resistive." In addition, they explain that they "secured" his head and arms at times and "directed" him to the floor in a "controlled descent." None of these statements are useful descriptions of the parties' actual behavior during the incident in question. How did plaintiff become "aggressive," "combative" or "resistive"? What did defendants use to "secure" him? What did they do to "direct" plaintiff and how was his descent "controlled"? These are questions defendants answer only marginally.

Because the proper analysis of the facts at summary judgment is to view them in the "light most favorable" to the nonmovant, Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003), I have recast defendants' proposed facts in less euphemistic terms (for example, they didn't "secure" his arms, they "grabbed" them). Where the facts are too vague to attach any meaning (such as "combative"), I have simply disregarded them. With those things in mind, I turn to the facts. From the parties' summary judgment submissions, I find the following facts to be material and undisputed.

3

UNDISPUTED FACTS

A. <u>Parties</u>

Plaintiff Terrance Edwards has been incarcerated at the Waupun Correctional Institution since September 25, 2003. Defendants are prison officials at the Waupun Correctional Institution. At times relevant to this complaint, defendants Travis Caul, Joseph Beahm, Jeremy Staniec and Eric Krueger were correctional officers, defendant Johnathan Hawkins was a correctional sergeant and defendant Brian Greff was a lieutenant at the institution. (Since the date of the incident relevant to this lawsuit, defendant Staniec has left to report for active duty in the Army and defendant Krueger has been assigned a position as a correctional sergeant.)

B. <u>The Incident</u>

On April 19, 2008, while plaintiff was in the shower, he broke his razor, removed the razor blade and used it to cut his left forearm. When defendant Caul learned of plaintiff's behavior, he retrieved a can of MK-9 OC Fogger, an incapacitating agent, from defendant Krueger. Defendants Hawkins and Kruger arrived at the shower area and saw plaintiff cutting himself with the razor blade. Defendants Hawkins and Staniec told plaintiff several times to stop cutting himself and defendant Hawkins told plaintiff to place his hands out of a trap door enclosing the shower area and hand over the blade. Plaintiff refused and

4

continued cutting himself.

Defendant Greff arrived and was told that plaintiff was cutting himself and refusing to hand over the blade. Defendant Hawkins dispensed a one-second burst of incapacitating chemicals from the fogger into the shower area and again told plaintiff to hand over the razor blade. Plaintiff continued cutting himself. Defendant Greff told plaintiff to hand over the blade. Plaintiff kept his back to Greff, but staff told Greff that plaintiff still had the razor in his hands. After telling plaintiff once more to stop cutting himself and hand over the blade, defendant Greff took the fogger and dispensed another one-second burst into the shower area.

Plaintiff dropped the razor blade, which was retrieved by staff, and placed his hands through the trap. Staff applied restraints to plaintiff's wrists, restraining him to the door. The door was opened and plaintiff was told to kneel down so that leg restraints could be applied. He refused to comply. Defendant Caul grabbed plaintiff's right arm and defendant Beahm held plaintiff's head. Together, they forced plaintiff into a kneeling position while restraints were applied to plaintiff's legs. Plaintiff was lifted to his feet and taken to a strip cell.

In the strip cell, plaintiff appeared to grow agitated and struggled with staff attempting to perform a strip search on him. Defendant Krueger grabbed plaintiff's right arm, defendant Caul grabbed plaintiff's left arm and "staff" performed a strip search. While

he was restrained, plaintiff made a lunging motion toward defendant Krueger. Defendant Greff threatened to use a taser and defendant Beahm pushed plaintiff to the door where defendant Greff held the taser. At that time, plaintiff agreed to cooperate. The taser was not activated.

Plaintiff's clothes were cut off with scissors and a nurse evaluate his cuts. She stated that they were superficial and that further attention could wait until plaintiff became more cooperative. Plaintiff was escorted to a shower cell and allowed to wash off any residual incapacitating agent. He was then taken to a cell. Shortly after, he was escorted out of his room, photos were taken of his injuries and a nurse looked at plaintiff's wounds. He was then placed in observation status.

## OPINION

To determine whether prison officials' use of force on a prisoner was "excessive" in violation of the Eight Amendment, a court must determine "whether [the] force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320 (1986). The factors relevant to making this determination include:

▸ the need for the application of force;

▸ the relationship between the need and the amount of force that was used;

- the extent of injury inflicted;

- the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and

- any efforts made to temper the severity of a forceful response.

Id. at 321. In Hudson v. McMillan, 503 U.S. 1, 9-10 (1992), the Court refined this standard, explaining that the extent of injury inflicted was one factor to be considered, but the absence of a significant injury did not bar a claim for excessive force so long as the officers used more than a minimal amount of force.

In this case, plaintiff does not challenge defendants' assertion that their use of force was not excessive at any time before he was restrained to the door. In other words, he waives any argument that defendants' use of incapacitating agents under the circumstances was excessive force. What plaintiff argues is that, after he was restrained, he should not have been treated as roughly as he was. Much of plaintiff's argument is grounded on his version of the incident, in which he states he was kicked and his head was bashed while he was restrained to the door and was attempting to cooperate with defendants. However, as I have explained above, plaintiff did not propose facts detailing his version of the story or even provide a sworn statement supporting that story, so his version has been disregarded.

What remains is plaintiff's contention that he should not have been forced to do anything, or even moved, once he was in restraints. He supports this theory by pointing to

7

Wis. Admin. Code §§ DOC 306.07, 306.09, 306.10 and 306.11.  A quick review of these administrative rules shows plaintiff is mistaken.  The rules allow staff to use restraints to confine inmates who pose an immediate threat to self or others.  Id., § DOC 306.11(1); there is no evidence that defendants' decision to use some degree of force on plaintiff and move him after he was restrained violated these rules.

However, even if defendants engaged in some violation of the administrative rules, this alone would not establish a constitutional violation.  The question is whether defendants' use of force against plaintiff was "malicious[] and sadistic[] [and] for the very purpose of causing harm."  Whitley, 475 U.S. at 320.  The facts do not support such a finding.  When plaintiff was forced to the ground, it was because he refused to kneel to allow staff to apply leg restraints; when he was held by defendants Krueger and Caul, it was in response to his struggling with staff and refusing to allow a strip search to be conducted; and when he was forced to the door and threatened with a taser, it was in response to his lunging at staff.  Although he was already restrained by Krueger and Caul at this point, plaintiff's continued struggling created a risk that he would free himself from the guards' grasp and harm someone.  Overall, defendants' response to his behavior appeared to be no more than necessary to get plaintiff to cooperate with their attempts to "process" him (applying restraints, conducting a strip search, performing a medical inspection and then placing him in observation status) after he attempted to harm himself.  At any rate, there is no basis for

8

concluding that defendants' behavior was "malicious" or "sadistic."

Because plaintiff has failed to adduce evidence that would allow a reasonable jury to find that defendants used excessive force against him, defendants' motion for summary judgment will be granted. Defendant Staniec's motion to stay proceedings against him will be denied as moot.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Travis Caul, Joseph Beahm, Jeremy Staniec, Eric Krueger, Jonathan Hawkins and Brian Greff, dkt. #40, is GRANTED.

2. Defendant Staniec's motion to stay proceedings against him, dkt. #39, is DENIED as moot.

3. The clerk is directed to enter judgment in favor of defendants and close this case. Entered this 11th day of May, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge